The next case we'll hear is Blake v. JP Morgan Chase, number 18-21, strikeout 2368. Good afternoon. May it please the court, I am Donna Siegel-Maffa from the law firm of Kessler, Topaz, Meltzer & Check, counsel for appellants Blake and Orkus. I request to reserve three minutes of time for rebuttal. Be granted. Thank you. At issue in this appeal is whether American pipe tolling extends to appellants' class claims which had been timely asserted in a prior class action that never reached a determination of class certification and which was pending on appeal of a dismissal when appellants filed their motion. I thought the Samp case, which is the case you're referring to, wasn't timely. The claims were timely asserted in that case and especially under the continuing violation theory. Didn't the judge say they weren't? The judge ruled on different theories of tolling, none of which addressed the separate accrual under RESPA. I'm not talking about the theory of the basis of the court's ruling. There's a judicial determination of untimeliness, correct? You may disagree with the reason. Yes. There was a judicial agreement that the claims had not been timely asserted and that the plaintiffs in the case were not entitled to equitable tolling, discovery tolling. What was not presented or considered in that case was whether a separate accrual rule applied to the RESPA claims asserted there, and under that rule, the claims were timely asserted. That's your argument as to why you can even try to get into American pipe tolling, claiming that your Samp case was, quote, timely filed, even though a judge has said they were time barred. You just have a different theory of why it's timely. Right, which was never considered and which was still supported by the allegations of the complaint in Samp, which were the same. And we had so that was an argument on dismissal that was never presented or considered in by the Samp court, which is one of the reasons that the appellants here determined that they had to grasp control of their action and take it, take it and assert it for themselves and assert the arguments that they thought would would prevail that had not prevailed in Samp. Can we agree that we are talking about the separate accrual rule? You referred as well to the continuing violations doctrine, but that's that's a different concept than the separate accrual rule, right? Yes, I think Judge Stengel addressed that in his opinion when he said he kind of classified his rule, which was actually a separate accrual rule as a different theory of continuing violation. I think it is more accurate, Your Honor, to characterize it as a separate accrual rule. And the separate accrual rule under under RESPA Section 8 that we have used and asserted and that Judge Stengel actually accepted as well as a basis for stating that the claims had been timely asserted as to statements from which kickbacks were accepted within one year of the filing is based on statutory language of RESPA and Section 8. Even if we let's say we accept your view that it's the separate accrual language, as Judge Crouse said, is the right language to use and that we were to find the district court judge's interpretation of the statute would support that for the purpose of this question. Right. In your reconsideration motion, you represented or counsel for the plaintiffs represented that neither Blake nor Orcus had made any private payments within one year before they filed the complaint. So even under the separate accrual rule, the two plaintiffs who have been put forth as the named representatives in this class action are time barred. That's precisely why the appellants need the fact that their claims were pending in SAMP and that a theory for those claims being timely as to payments which were made within one year of the filing of SAMP is that they need American Pythoning based on that. Okay, let me just rephrase that real quick. So if we agree that the separate accrual applies, your clients would be time barred unless we find American-type polling to apply. Exactly, which goes to I think the third question. You need both. You do not have separately accruing wrong continuing up to today. You said they didn't continue in the year before the complaint. You have enough separately accruing wrongs to get you up to the date of the SAMP complaint? Yes. And so you want to add separate accrual being triggered by each kickback. Right. Not at the closing. If you can add that to American-type, you can prevail. If you lose on either issue, then you lose. Yes, that's correct, Your Honor. And the court in SAMP never considered the separate accrual rule, which if it applies to the statutory claim, it applies. And that's why the dismissal decision that was made in SAMP should not act to bar these appellants' claims, which were pending and were timely under the separate accrual rule to bar them from being able to rely on American-type to assert that. Because when they did assert it in this action, Judge Stengel said, yes, you're right. The separate accrual rule applies, and your claims were timely pending in SAMP. And in fact, they were entitled to American-type tolling, but for the fact that it filed too soon. So then what you're talking about is one occurrence of a violation, the payment that was made within one year of the filing of SAMP? All payments that were made within one year of the filing of SAMP. Because the statutory language is no person shall accept a kickback in exchange for a referral of business that's incident to a mortgage loan. But not going back any time beyond that one year. No, and that is one of the consequences of not bringing a claim earlier. You forfeit the claims that do not fall within the one year of making your RESPA claim. That is why this differs from something that we relate back to. But we'll go back to assuming that the separate accrual rule applies. What the district court didn't have was China Agritech. That's correct. Life changed, and China Agritech seems to say, and I know you have a different view, and we'll talk about pending and class denials. But China Agritech's language seems to say that American-type tolling is not applicable when the action that wants the tolling is a class action. It's good for individuals, it's good for interveners, but not class. So if that's what China Agritech says, your client would be barred, correct? Right, and your Honor is correct. The question that was presented and considered in China Agritech is whether you can relitigate serially the propriety of a class action proceeding. It did not discuss an action that had ended as a result of a dismissal. It actually said successive, and you read successive to mean serial. But successive could be filed any time after the first case was filed. Follow-on cases. That could be the court. And wouldn't that be more consistent with sort of a whole thrust of the opinion? I don't know that I agree with that, Your Honor, because I think that what the court was looking at is the people who had continually tried to – a class had been denied, that class was over, they started another one. And again, the class was – the class – propriety of class action was considered again. And if you're going to rely on a class action to pursue your claims, it makes no sense to – under American PIPE, and it doesn't serve the purposes of American PIPE, to allow a person to again relitigate whether a class is an appropriate way to proceed with these claims, because that's already been determined and it doesn't make sense procedurally to let that procedural issue continue to go on and on and on. But under the rule you'd like us to apply, that's exactly what you would want done. We weren't happy with what happened in the period of class action in SAMP. You have a view about whether it was still pending. We'll talk about whether there was any legal authority to say something is still pending when it's on appeal. But then filed this action. Let's say things don't go well today and you get a feeling like maybe we should file somewhere else. Are you going to go to that next judicial district and say, well, we should get tolling from all the way back in SAMP? And it would just go on and on and on. And that was the concern in one of the opinions. I think that – it was the concern in one of the opinions. I think that that's kind of a speculation about what might occur, sort of like the arguments that were presented to the Supreme Court, and they said one of the arguments was, well, if you adopt this rule that says you can't use American PIPE tolling following a class denial, you're going to just have this multiplicity of suits. That's against the policy of American PIPE. And the court said, no, that's not what's going to happen, because we can see from what has happened in the Second Circuit and the Fifth Circuit, where they are adopting this rule that we are no subsequent class actions, successive class actions after a denial of class certification, that that doesn't happen. We haven't seen that happen. And in fact, if you look at the Corwick decision in the Second Circuit and the case law that came under it, that the Supreme Court was discussing in China Agritech, that rule and the rule that they were saying, look, it's workable, that rule does distinguish between a dismissal and a class determination. Why aren't all three of the motivations behind the China Agritech opinion in play here? That is that to encourage prompt filing and to allow a district court to select the best class representative, it doesn't matter whether we're talking about a class action that ends as a result of denial or dismissal. That's something you still want to encourage. That in terms of the we've talked a little bit about the the endless tolling and what happens when, as here, there seem to be extensions and extensions of the statute of limitations. And the concerns about the diligence of of a plaintiff and that someone who, as here, knows here for over two years about the cause of action that they could bring and delays in bringing it, is then not acting as a diligent potential class representative. Take them kind of in reverse order with regard to diligence. I think the Supreme Court in China Agritech also said that, you know, we expect that people will watch what's going on in an action and they they're diligent. They'll bring their class action if they want to take the lead. Class briefing may be underway already and they're going to jump in and do that. Well, when you have a circumstance with a plaintiff who knows, yeah, my claim has been asserted in a class action, particularly in a consumer class action. And the plaintiff at the same point says, well, I don't want it. I can't be the lead plaintiff. I don't have the wherewithal. This is a small consumer claim. I don't know how to give representation. And I'm I'm satisfied that I will be I will be diligent. I'll watch this. I'll see what's happening. And if it's if I determine that there's a reason that the adequacy of the current representative or the way that they're prosecuting the case makes no no sense. That's when I'll jump in because I know I can because American pipe has has saved my my claim to to rule. The other way is to say every time a class claim is is filed and you know about it. And even if it's a small consumer claim and even if it has a very short statute of limitations, the only way to protect yourself and the only way to ensure you have an opportunity to participate in a class action is to act immediately. But there's a lot of classes everywhere. But that's what the court's first rationale, which is encouraging those who think they do have the wherewithal to be a class representative, to step forward quickly so that they can be selected and that the district court has before it all those potential of these class representatives to make a decision. But what about a plaintiff who doesn't think they have the wherewithal? It doesn't think they have the ability and doesn't see it as practical for the type of claim they have. And they are willing to rely on the fact that their claims are being protected and pursued until it comes to a point, just like the person who files perhaps when a class certification motion is pending, where they say, wait, my claims and the claims of other people like me are going to be lost. And I don't think I need to step forward now. They preserve the ability to go forward individually. Right. They have that from American Pipe. What they don't have is the ability to step forward and institute a successive class action, which seems like from the plain language of China Agrotech. And the court said, we hold that American Pipe does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, and granted they did reference the denial of class certification. But the actual holding of the case is much broader than that. And that would be a reasonable way to interpret the case if it didn't focus on so much of this discussion with regard to the denial of certification and didn't point to circuits whose rules distinguish between dismissals and denial of certification and saying this is a workable rule that we're adopting. Because to require plaintiffs to jump in to ensure that a class mechanism remains available to them and is not eviscerated by a dismissal order that may have no application to a particular plaintiff, is to deny those people the opportunity to rely on the very mechanism and the economies and efficiencies that class actions and Rule 23 are supposed to advance. And it isn't the case that you would have an endless statute of limitations, because if you allow successive class actions, which I do think that there's a distinction between successive and overlapping, but if you allow successive, as he said in the time phase, you're going to have each gap is going to be a loss of time. You're not going to have endless tolling. And as I think this court and other courts have recognized, if there becomes a situation where it seems like there's been abuse by a plaintiff or their attorneys and their gamesmanship and all, the courts are equipped to handle that. They're equipped to handle that. And you also have principles of stare decisis and comedy that a court can bring into place and say, well, that was dismissed before and the same reason applies here. I'm sorry for going over. Thank you. No problem. May it please the court. Jonathan Massey for the appellees in this case. We agree that China agri tech means what it says. And we think that in deciding whether American pipe tolling should be extended to plaintiff's class claims, the court should recognize that China agri tech's holding and the policies and purposes articulated in China agri tech, as you mentioned, both militate against adopting plaintiff's reading. What do we draw from the fact that the parties, both in their proposed question presented for cert and as they tried to argue it for the court, tried to frame the question broadly and the court in reframing the question did it in a much narrower way, limiting what it said it was going to address to denial of class certification. Should we be taking that that holding more broadly than the way the Supreme Court itself framed it at the outset? I don't think it's the first time that the Supreme Court rephrases a question one way and then issues a broader opinion after it has a chance to digest the briefs and hear the argument. I do think your honor correctly identified the holding that the court mentioned, the way the court phrased the holding. You know, the plaintiff who waits out the statute of limitations may not piggyback on an earlier time we filed class action. The court said its precedents do not so much hint that American pipe tolling extends to otherwise time barred class claims. So when it came down to writing the holding, the Supreme Court reached beyond, I think, the class certification context. And that's what the First Circuit said in this Alexa pharmaceutical marketing sales practices case that we submitted on a 28 day letter. They recognize the First Circuit said that the actual holding is broader than the question as it was initially framed. And I think that is compelled also by the policies and principles identified by the court. The endless tolling issue, the incentive to file early. I think on this point, it's important. My friend on the other side talked about the multiplicity of actions that the court encouraged. The court was encouraging a multiplicity only in the sense of having as many timely filed class actions as possible. And that that's clear from page 18, 11 of the opinion where the court said its rule would, quote, propel putative class representatives to file suit well within the limitation period and seek certification promptly. So that's what they wanted right away. Lots of class actions. And then the courts could pick and choose. Let me go back for a minute. I think also Justice Sotomayor and her concurrence was the whole concurrence is about this breadth of the majority opinion. And she quite clearly says she read China Agritech as a, quote, blanket, no tolling of class claims ever rule. And that that was in the fact that she'd got no other votes in her concurrence. The whole thrust of the concurrence is the majority opinion is written too broadly. I think that is also relevant data that your honors can can use in interpreting the opinion. And you notice that the First Circuit, the selective sales practicing case was not a set class certification ruling. That was a case where the prior action had been dismissed and the voluntarily dismissed. And the First Circuit expressly noted that, quote, there was no substantive ruling on class certification. But the court with the First Circuit went on to apply China Agritech because it said not to do so would allow, would create this endless tolling problem, a chain of withdrawing class action suits to extend the limitation period forever. So I think the First Circuit was correctly reading China Agritech and identifying the policies as well as the holding. Justice Sotomayor's approach, her characterization of the majority opinion may have simply been going to concern about the ability of plaintiffs to intervene as class representatives. Yes, I think she was. She had several points. I think that was certainly one. She said you could have restricted this to the PSLRA context. She had a number of points and she was but but she was recognizing that the majority had written, you know, quite a broad opinion. And I think and she uses the word broad several times. And the First Circuit picked up on that and said this is a broad opinion. And I do think that it but I don't I want to don't want to just rest on the wooden language of the holding. I don't want to say that you I think the policies really animate that. I mean, under plaintiff's theory, they would have been allowed to go from SAMP, which was dismissed in May of 2013. They filed six months later in the in this circuit with their with the new case. And that was a you know, that created under their theory, as Judge Schwartz pointed out, they would be able to proceed from Florida to New York or wherever. There could be quite a series of endless tollings, regardless of whether the SAMP court had reached the certification question or not. The fact that the same court dismissed on a 12B6 rather than a rather than reaching class certification in no way eliminates this problem of endless tolling. When you have a stale case, the first motion is going to be a 12B6 limitation period limitations defense. And so I think that the that problem, the problem that so drove the court in China, Agritech is very, very much present here. And so is the principle about not lying in wait. You know, the idea of incentivizing as many early class actions as possible, I think, is shown here. Because if you're if the if the would be second or third or fourth class representatives can wait and see what is happening in the first case, they will not be incentivized to file early the way the Supreme Court wanted them to. And in SAMP, it took the SAMP was filed in 2011. It was not dismissed until May of 2013. And so if you're going to accord tolling to subsequent actions, that's, you know, that's a multi-year gap in in a multi-year delay in what the Supreme Court was trying to avoid. I gather your position would be whether we read 2607 as a separate accrual rule or a continuing violation rule. China, Agritech bars them because they have no benefit of tolling because the current plaintiffs are time barred. Correct. I mean, the plaintiffs have said both to the district court and to and to this court that their claim depends on China, Agritech. And, you know, you heard that in the first argument and they actually had pledged China, Agritech in the complaint. It's at 748 of the appendix. So the case does depend on China, Agritech. You can your honors need not go beyond China, Agritech in order to affirm. If you wanted to reach the separate accrual rule, we have plenty of arguments there that we're very confident in. We welcome, you know, the chance to address any questions on that mechanic of how the private mortgage insurance works. Yes. For how long does one pay the insurance? Is it until you finally get to the 20 percent down payment or is it correct? Some period of time. Correct. And so you can pay off early people who make a who pay off the principal enough of the principal to get above 20 or 22 and a half. Sometimes it depends, but say 20. They they would they would stop paying private mortgage insurance early in the loan. And so one of the anomalies of the separate accrual rule is it would afford a shorter limitations period to someone who paid off the lump sum of the principal early. And usually that's a good thing. And those people, though, would get the penalty or the down the downside of not having as long a statute of limitations. It seems odd that Congress would have wanted such a result because those are the people Congress was focused on a particular set of actions. And it was it was it was give or accept. Well, it was a quid pro quo. That was what Congress. It's not illegal to give or accept if there's no quid pro quo. Right. The language of 20 of eight as Section 8 or 20, 20, 607 a talks about in exchange. Right. Pursuant to an agreement. Correct. I was spoken on the act rather than the benefit that you receive from paying. But I think George Schwartz's point is that the active verb is give or accept. The pursuant to the agreement is an attendant circumstance. Doesn't have to be at the same time. Could have been earlier. But if Congress put this in the present tense, the action ordinarily runs from that from then. And Congress has said this report has said it'd be a very odd statute of limitations that didn't run from that last element that makes it actionable. Right. But here, the thing of value was the right to reinsure the private mortgage. That is the ultimate source of the of the of the property right that the that the reinsurer had. The reinsurer was going to get a stream of payments in the future. Somewhat uncertain. And as Judge Schwartz pointed out, you could pay off. You could. The borrower could pay off the principal. Get up to 20 percent, you know, in the first year. Then you lose all future payments. The thing you knew you had the exchange was I will give the the referral will go to the private mortgage insurer and the allegation. Anyway, this is all alleged to be crediting crediting the allegations was that the reinsurer then got the right to reinsure that. And that happened at closing. And so the fact that the rest is all focused on settlements, things that happen at settlement title insurance, loan origination, you know, inspections, all of those typical rest, the settlement services all happen at closing. And that was Congress's intent. And there'll be a circumstance where someone does receive and give something in exchange for something else post-closing. Yes. Yes. We don't we're not urging some sort of categorical rule that nothing could ever happen. But at closing, it's just that these kinds of captive insurance claims, if they arise at all, arise at closing. That's what this court said in Cunningham, which is exactly the same circumstances. Well, Cunningham didn't have in front of it the issue that's been presented to us, which is this separate rule versus continuing violation. They were equitable tolling. So I don't know that we can use Cunningham as indicative of anything with respect to how to read the statute for this. The parties had conceded it. Well, the party said, well, yes, but the court understood it. And it did say that it warned of a statutory interpretation that would effectively write the statute of limitations out of RESPA at page 164. So I don't think that that Cunningham is of no value. But if I'm not saying it's the violative act is the kickbacks, the way Congress seems to have written the statute, that is that the illicit payments. And the premiums, those payments are coming out each every month as a result of the agreement. But the kickbacks are continuing. Then why are we really talking about a penalty or different statute of limitations for some homeowners than others? All we're talking about is whether there was, in fact, a kickback within a year of bringing the claim. Well, we don't think that the payment, each payment is is the right point to use for a violation. We don't think that's the right focus. We think the thing of value, which the point of stress is very broad term, very broad phrase. The thing of value is the right to reinsure, which led to the streaming of payments that came out over time. Uncertain because they could be the borrower could pay them off. But in our view, each kickback is not a separate violation. Let's pretend this was a criminal kickback scheme and there are criminal kickback statutes that track the same language. And the thing of value was you will not burn down my business if you'll pay me. Right. I've got that thing of value. And then every month, the store owner has got to pay. Is it your position that those payments would not be the kinds of illegal payments? No, because I think in that case, there is an implicit renewal every month. The person knows if I don't make this payment, my business will be burned down. Not because of the conversation we had 10 years ago, but because the organized crime is still there. But couldn't someone pull out of this private mortgage insurance arrangement after they first entered? So, you know, some I'm going to do something different to get my own independent insurance. So it is renewable each time I'm paying. And if you don't, then you're in default. So this is being held over the person's head. You have to keep paying on this or get a substitute each month. I don't think that I don't think that is. I don't think the situations are comparable because in the in the rest of the context, there was a closing. There was an agreement. The parties are no longer in contact or communication. The private mortgage insurer collects from the servicer. The servicer is the agency that's in charge, that's in contact with the borrower. And to say that each kickback creates a separate violation creates all sorts of anomalous situations. Because this is a criminal statute, too. And there's a one year criminal, one year imprisonment and $10,000 fine per violation in the statute. If there if each payment is a separate violation, then a single loan will throw off dozens, hundreds of violations. That seems unreasonable. Objections that were made and rejected in Petrella, where the Copyright Act, of course, they were they were partially civil statute limitations. But there's a criminal provision in the Copyright Act right next to it. And the objection was you're going to have a plethora every time the movie Raging Bull is downloaded, licensed, watched, sold. You're going to have a plethora of lawsuits. The Supreme Court said, well, then just stop violating the copyright and then you won't be subject to suit. Well, I think you're stop collecting the private mortgage insurance. And the statute of limitations ends. Well, I think Petrella is very is telling because of the main message I take from Petrella is that statute of limitations are for Congress. And courts should be cherry of tinkering with them and essentially rewriting them. And I think that obviously animates the China, Agritech, American Pipe discussion. But also it I think animates the separate accrual rule, because I think in applying separate accrual rule, which is not mentioned in the statute, not, you know, and I know there's confusion between continuing violations, equitable, separate accrual, all of this. You know, Congress wrote a statute which created a one year limit for rest for the kinds of violations here. There are three year limits for actions by attorneys general, by the bureau, other parts of the disclosure part of the statute. And so when Congress created a deliberately short period of time here and up and I think there I think we're essentially rewriting it. If we say there is going to be a 30 year mortgage, the person may be by by maybe paying for 10 years. There are maybe paying private mortgage insurance for 10 years that there are there's 10 years worth of violations. The questions about evidence being lost or witnesses being unable to be located. Those all come into play. And so I think that deliberate choice of a one year statute of limitations by Congress is probative. Your interpretation would would mean that if the closing settlement was structured in such a way that payments didn't begin until a year and a day. That there would be no cause of action at all. It would be time barred at that point to the end of time. No, to the contrary, your honor. We're saying the thing of value that was exchanged at closing was the right to reinsure. That is independent of the payments. Our our rule would have the benefit of not worrying about the payments. You're the one year statute of limitations. Right. But but I agree. We agreed at closing that I would have this right. That's a thing of value. The plaintiffs point out and they're right on page 20 and 21 of their reply. Everything of value is a broad term, clearly encompass the right to receive the right to reinsure the private mortgage. It does, but it doesn't exclude the actual payments as themselves. Fees are kickbacks which themselves are actionable for a year. That's that's true. Except I do think that calling it combining and calling each actual payment a separate violation leads to all sorts of anomalous results. For example, in Judge Cross's example, in Judge Cross's case. What if the private mortgage insurer do some to an accounting breakdown? Never transfers the portion owed to the reinsurer. And and or that there's just or an embezzler at the private mortgage insurer takes the money and never gives it to the reinsurer. That would mean that there was a violation under the plaintiff's view. The simplest way to read the statute is to say there was an exchange at closing of the right to reinsure for the referral of the business. There was one violation. It happened that it fully accrued that it could be sued on that. What would we do then with the fact that the remedy that's provided for private right of action under under 80 is. Treble damages for the amount of charges paid for such settlement service. And there would there would then be no remedy because you're not looking to the payments. Well, you would you would have at the time of closing, you're actually given you do know pro forma. What if you pay at the minimum every month, what's going to happen? And so, yes, I think it's I think as you pointed out, you might pay it off early. The time of payment is but is a variable and also whether the captive reinsurer will continue to accept payments over over the market value. Right. Right. But I think, well, once you reach the 20 percent, you're not obligated to pay. I don't I think that in a case like that where someone identified the violation on the right at closing, they would be able to sue for the extra for the extra increment that they had been that they were projected to pay over the course of the loan. I don't think that. But in any event, thankfully, you don't have to reach the separate accrual rule if you simply affirm I'm trying to agritech. But I do think that all of these hypos are very are are illuminating, but ultimately represent ultimately show that some of the downfalls, some of the anomalies of reading the statute to say that each payment is a separate violation. So I'd urge the court to avoid that result. Thank you. I would like to touch on the last bit of discussion first, because I think if you go back to the statute, if you go back to the language of the statute, it does not say if there are several things of value. Accepting one, you know, absolves you for accepting any of the other ones that go along with the scheme that you've entered. And the statute is clear. You can't accept a kickback or any other thing of value. So it may be true that you when you accept the opportunity, you've that's a violation. But when you accept a payment from which when you accept a kickback from a payment that is is part of an agreement to refer business mortgage insurance business, that's under the plain language of the statute is exactly what the statute is meant to cover. It's meant to stop kickbacks. And if you look at Freeman versus Quicken Loans, the Supreme Court's decision, interpreting Section 207B, you will see that the court took a very specific language oriented, which is statutory instruction. Statutory interpretation requires. What did the court what did this was the statute say? The statute says except here with regard to 207B, they said the statute said you have to divide it. You have to split it. If there's no split, you can't you don't have a claim for an overcharge with regard to Section 206A. It says no person shall receive, no person shall give and no person shall accept a kickback pursuant to an agreement to refer business. Every single time the defendants here accepted a sham reinsurance payment, which was the kickback, which was paid for by a monthly PMI payment. That is another occurrence of something that the statute says you're not allowed to do. And so interpreting the statute doesn't write the statute limitations out of existence. Instead, it says, well, what's the structure of the deal that we're looking at here? What are you telling me that you think is wrong here? Well, this deal, in this case, the defendants structured it such that they would get a kickback every month pursuant to this agreement. Until the 20 percent until PMI stopped. But that was their choice. They structured it that way. That's not writing the statute out of existence. That's applying it directly as the statute was written. On the China Agritech issue, can I ask you to respond to your friend's observation that your position looks like Justice Sotomayor's position, which is not a majority position? I would say that Justice Sotomayor, actually, when she was expressing what her concerns were, when you look at the Supreme Court opinion in 1814, is talking about this blanket, no ruling, no totaling of class action rules outside the PSLRA context. She says it's too broad because instead of doing that, what you could do is consider, why is a class certification decision being denied? What was the basis for it? Was it the basis because the class representative was inadequate, adequate? The class representative didn't have standing, but perhaps the claims were still appropriate for class treatment. And so she was still focusing on the application of the decision in a context where you're talking about no toling after a class certification decision. And I think this Court has already recognized that broad ruling with regard to after a class certification determination has abrogated Yang. But this discussion, the decision of the Supreme Court never talks about a dismissal. And it sets up the question as after a denial of class certification. And the consequences of expanding and extending that rule to any sort of ending of any claim that was ever filed as a class action to foreclose every other person who was part of that initial period of class, who may not have that same defect, is just simply inconsistent with American pipe toling and doesn't have the same rationale behind saying once class is decided, you can't keep asking for a class. It just doesn't make sense. The plaintiffs here are not asking to relitigate a class certification. Their case has never been determined to be unsuitable for class treatment. And there's no merit to adopting a rule that the Supreme Court did not articulate, and it certainly could have, that would deny appellants the ability to continue to pursue their timely asserted claims on a class basis upon dismissal determination that did not consider arguments appellants presented and prevailed once they took control and did not consider whether this case should be a class certification. Thank you very much for a well-argued and well-briefed case. We'll take the matter under advisement. Thank you.